**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BANKERS STANDARD INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:15-cv-02184-LMM |
| CALVIN DARDEN, SR. AND PATRICIA GAIL DARDEN, | ) ) ) | |
| Defendants. | ) | |

## CALVIN DARDEN, SR. AND PATRICIA GAIL DARDEN'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COME NOW Calvin Darden, Sr. and Patricia Gail Darden, Defendants and Counterclaim Plaintiffs herein ("the Dardens"), by and through their attorneys, and file this Answer, Affirmative Defenses, and Counterclaim against Bankers Standard Insurance Company ("ACE"). The Dardens respond to ACE's Complaint (Doc. 1) as follows:

### First Affirmative Defense

Plaintiff fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff has waived, or is estopped from asserting, any right to recoup defense costs it incurred defending the subject Sims Action by failing to raise same

in its reservation of rights letters and due to statements made by ACE to its insureds.

## Third Affirmative Defense

Plaintiff ACE has waived, or is estopped from asserting, any right to deny coverage under the subject Homeowners and Umbrella Policies based upon its failure to provide the Dardens with an adequate reservation of rights.

## Fourth Affirmative Defense

Defendants reserve any additional and further defenses as may be revealed during discovery.

Responding further to the numbered paragraphs of ACE's Complaint, the Dardens respond as follows:

1.

Bankers Standard is an insurance company organized under the laws of the state of Pennsylvania and maintains a principal place of business in Philadelphia, Pennsylvania. Bankers Standard is a citizen of the state of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

**ANSWER**: Admit.

2.

Upon information and belief, Defendants Calvin Darden, Sr. and Patricia

Gail Darden maintain a primary residence located in Roswell, Georgia and are citizens of the State of Georgia within the meaning and intent of 28 U.S.C. § 1332.

**ANSWER**: Admit.

3.

Plaintiff and Defendant [sic] are citizens of different states, and as is more fully set out below, the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs. Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

**ANSWER**: Admit.

4.

This Court is the proper venue for this declaratory judgment action pursuant to 28 U.S.C. § 1391(a) because Defendants reside in Georgia and the insurance policy was issued and delivered in Roswell, Fulton County, Georgia, which is in the Northern Judicial District, Atlanta Division, pursuant to 28 U.S.C. § 90(a)(2).

**ANSWER**: Admit.

5.

Bankers Standard seeks a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "right and other legal relations of any

interested parties seeking such declaration, whether or not further relief is or could be sought."

**ANSWER**: The Dardens admit that ACE seeks declaratory judgment pursuant to the Federal Rules and 28 U.S.C. §§ 2201 and 2202, but deny that they are entitled to the relief sought.

6.

Bankers Standard is, and during all relevant times has been, in the business of underwriting and issuing policies of homeowners' insurance and is authorized to transact the business of insurance in the State of Georgia.

**ANSWER**: Admit.

7.

The Dardens are insured through a homeowners insurance policy, Policy No. 268-00-99-36H, issued by Bankers Standard (hereinafter referred to as the "Homeowners Policy"). A true, accurate, correct and genuine copy of the Homeowners Policy is attached hereto as Exhibit "A." The Policy was in effect from March 31, 2011 through March 31, 2012 and provides $500,000 in personal liability coverage.

**ANSWER**: The Dardens admit that they are insured through a homeowners insurance policy, Policy No. 268-00-99-36H, issued by ACE. At this time, the

Dardens cannot confirm whether Exhibit A attached to the Complaint is a "true, accurate, correct and genuine copy" of their Homeowners Policy.

8.

The Dardens are also insured under an Umbrella policy, Policy No. 268-00-99-36U, which was effective from March 31, 2011 through March 31, 2012 and provides $10,000,000 in personal umbrella liability coverage (hereinafter referred to as the "Umbrella Policy"). A true, accurate, correct and genuine copy of the Umbrella Policy is included in Exhibit "A."

**ANSWER**: The Dardens admit that they are insured through an umbrella insurance policy, Policy No. 268-00-99-36U, issued by ACE. At this time, the Dardens cannot confirm whether Exhibit A attached to the Complaint is a "true, accurate, correct and genuine copy" of their Umbrella Policy.

9.

The Homeowners Policy provides the following coverage:

**DEFINITIONS**

In this policy, *you* and *your* mean the person shown in the Declarations and the spouse if a resident of the same household. *We, us* and *our* mean the Company providing this insurance.

In addition, certain words and phrases are defined as follows:

. . .

**2. *Bodily Injury*** means physical harm, sickness, mental anguish, sickness or disease, including required care, loss of services and death that results.

. . .

**8. *Insured location*** means:

    **a.** The *residence premises*;

    **b.** The part of any other premises, other structures and grounds used by you as a residence;

        **(1)** Which is shown in the Declarations; or

        **(2)** Which is acquired by you during the *policy period* for your use as a residence;

    **c.** Any premises used by you in connection with a residence described in **a.** and **b.** above;

    **d.** Any part of a premises where an insured person is temporarily residing;

    **e.** Vacant land, other than farm land, owned by or rented to an *insured person*;

    **f.** Land owned by or rented to an *insured person* on which a one or two family dwelling is being built as a residence for an *insured person*;

    **g.** Individual or family cemetery plots or burial vaults of an *insured person*; or

    **h.** Any part of a premises occasionally rented to an *insured person* for other than business use.

**9. *Insured person*** means:

    **a.** You and residents of your household who are:

        **(1)** Your *family members*; or

        **(2)** Other persons under the age of 25 and in the care of any person described above;

    **b.** Under Part **II**, *insured person* also means:

        **(1)** With respect to animals or watercraft to which

this policy applies, any person or organization legally responsible for these animals or watercraft that are owned by you or any person included in **a.** above. *Insured person* does not mean a person or organization using or having custody of these animals or watercraft in the course of any business or without consent of the owner; or

(**2**) With respect to any motor vehicle to which this policy applies:

(**a**) Persons while engaged in your employ or that of any person included in **a.** above; or

(**b**) Other persons using the vehicle on an *insured location* with your consent with respect to their legal responsibility arising out of its use.

. . .

**11.** *Occurrence* means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the *policy period* and results in *bodily injury* or *property damage*; or

**b.** An offense, including a series of related offenses, committed during the *policy period* and results in *personal injury*.

## PART II – LIABILITY

. . .

## LIABILITY COVERAGES

### 1. Personal Liability

If a claim is made or a suit is brought against an *insured person* for damages because of *bodily injury*, *property damage* or *personal injury* caused by an *occurrence* to which this coverage applies anywhere in the world, we

will pay up to our limit of liability for the damages for which an *insured person* is legally liable.

. . .

## DAMAGES WE DO NOT COVER

### 3. Watercraft

We do not cover any *bodily injury, property damage, personal injury* or *medical expenses* arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading, entrustment to any person, failure to supervise or negligent supervision of any person, or vicarious liability of any watercraft:

> **a.** That is 26 feet or more in length or more than 50 horsepower and which is owned by an insured person or furnished or rented to an insured person for longer than 30 days;

> **b.** Used for any business or commercial purpose; or

> **c.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion **c.** Does not apply to a sailing vessel less than 26 feet in length.

This exclusion does not apply to watercraft that are stored.

Policy No. 268-00-99-36H, Policy Form HOME ACE-0109, Exhibit "A."

**ANSWER**: The Dardens admit that the partially quoted sections of the Homeowners Policy are accurately recorded. However, the entire policy speaks for itself.

### 10.

The Umbrella Policy contains definitions, conditions and exclusions for

personal injury and property damage that are similar to the Homeowners policy. In part, the Umbrella Policy states:

### PERSONAL UMBRELLA COVERAGE

We will pay *damages* an *insured person* becomes legally liable to pay for *bodily injury, property damage, personal injury* caused by an *occurrence* to which this insurance applies:

    **a.** In excess of *damages* covered by *required underlying insurance* plus the applicable limits of any other collectible insurance that covers the *insured person* for the *occurrence*;

    **b.** From the first dollar where *required underlying insurance* either:

        **(1)** Exists, but does not apply to the particular *occurrence*; or

        **(2)** Is not required under this policy and no other collectible insurance exists.

. . .

### DAMAGES WE DO NOT COVER

#### 3. Watercraft

We do not cover any *damages* that arise out of the ownership, maintenance, occupancy, operation, use, loading or unloading, entrustment to other people, or vicarious liability of any *watercraft*:

    **(1)** That is 26 feet or more in length or 50 or more horsepower and owned by, furnished or rented to an *insured person* for longer than 90 days and is not shown in the Declarations;

    **(2)** Not covered by *required underlying insurance*; or

    **(3)** Used for any *business* or commercial purpose.

This exclusion does not apply to:

> **(1)** Any *watercraft* while it is stored or at a place an *insured person* owns, rents or controls; or

> **(2)** Covered *damages* as provided under Extra Benefit **4.** Newly Acquired Auto and Watercraft Coverage.

Policy No. 268-00-99-36U, Policy Form UMBRELLA ACE-0109, Exhibit "A."

**ANSWER**: The Dardens admit that the partially quoted sections of the Umbrella Policy are accurately recorded. However, the entire policy speaks for itself.

## 11.

On August 10, 2012, Dwight Sims ("Mr. Sims") filed a Complaint against the Dardens in the Circuit Court of Hamilton County, Tennessee, Docket No. 12C979 (hereinafter referred to as the "Sims Lawsuit"). A true, accurate, correct and genuine copy of the Complaint is attached hereto as Exhibit "B." In the Complaint, Mr. Sims demands $875,000 in damages.

**ANSWER**: Admit.

## 12.

In his Complaint, Mr. Sims alleges that, on September 3, 2011, he sustained injuries caused by the allegedly negligent operation of the Darden's [sic] boat. *Id.*

**ANSWER**: Admit that the allegation is contained in Mr. Sims' Complaint,

but the Dardens deny any negligent operation of the Dardens' boat.

13.

The Darden's [sic] boat was not scheduled on the Darden's [sic] Homeowners or Umbrella policy. *See* Homeowners and Umbrella Policies, Exhibit "A."

**ANSWER**: The Dardens are still investigating the issuance of the subject Homeowners and Umbrella Policies, and cannot therefore confirm whether the policies were issued correctly. Therefore, at this time, the allegations of paragraph 13 are denied.

14.

Upon information and belief, the boat involved in the accident was a 21 foot Sun Tracker that the Dardens purchased approximately two years prior to the accident date.

**ANSWER**: Admit.

15.

Upon information and belief, the Darden's [sic] Sun Tracker boat was outfitted with a 220 horsepower motor at the time of the loss.

**ANSWER**: Admit.

16.

Upon information and belief, the loss did not occur within 90 days following the purchase of the boat.

**ANSWER**: Admit.

17.

On November 3, 2011, Bankers Standard wrote the Dardens stating it was "conducting its investigation and defense of this claim under and subject to a full reservations of rights pursuant to the terms and conditions of the policy of insurance under which claim has been made." A true, accurate, correct and genuine copy of the letter is attached hereto as Exhibit "C." On October 3, 2012, Bankers Standard wrote the Dardens advising that "there is no coverage under the policy for the claims asserted in the lawsuit." A true, accurate, correct and genuine copy of the letter is attached hereto as Exhibit "D." The letter further stated: "In the event you are held legally liable by a judgment or settlement because the vessel you were operating at the time of the accident was not insured under your Home or Umbrella policies. You would remain responsible for the payment of any award or judgment entered against you in the litigation, or for any amount agreed by you to settle the lawsuit." *Id.* Bankers Standard did, however, agree to defend the Dardens in the Sims Lawsuit. *Id.* On May 22, 2015, Bankers Standard sent the Dardens

supplemental correspondence advising that it reserved the right to recover any and all monies it expended in providing counsel for any non-covered claims. A true, accurate, correct and genuine copy of this correspondence is attached as Exhibit "E."

**ANSWER**: The Dardens admit that ACE wrote the Dardens a letter dated November 3, 2011, which letter speaks for itself. The Dardens further admit that ACE corresponded with the Dardens by letters dated October 3, 2012 and again on May 22, 2015. The Dardens admit that the May 22, 2015 letter was the first time that ACE advised the Dardens that ACE purportedly reserved the right to recover any monies expended in providing counsel for the Sims Action.

18.

The Dardens take the position there is coverage under the Policy.

**ANSWER**: The Dardens are still investigating the issuance of the subject Homeowners and Umbrella Policies, and can therefore neither admit nor deny this paragraph. However, the Dardens do take the position that ACE has waived, or is estopped from asserting, any right to recoupment of defense costs incurred defending the Sims Action, and has waived, or is estopped from asserting, a lack of coverage due to defense of the Sims Action for years without an adequate reservation of rights.

## **Count I: Declaratory Relief**

19.

Bankers Standard incorporates herein by reference each of the allegations contained in paragraphs 1 through 18 above.

**ANSWER**: The Dardens incorporate by reference herein each of the responses contained in above paragraphs 1 through 18.

20.

The accident at issue in the Sims Lawsuit involved Mr. Darden's Sun Tracker boat which had a 220 horsepower motor at the time of the loss.

**ANSWER**: Admit.

21.

The loss did not occur within 90 days following the purchase of the boat.

**ANSWER**: Admit.

22.

The Policy provides coverage for accidents arising out of small boats purchased or rented by the insured under certain circumstances, but not for a period longer than 90 days following a purchase, and never for watercraft equipped with a motor in excess of 50 horsepower.

**ANSWER**: The policies speak for themselves. The Dardens deny any

statement contained in paragraph 22 which is inconsistent with the terms of the subject insurance policies and ACE's actions over the past four years.

23.

Accordingly, there is no coverage under the Homeowners or Umbrella Policies for the claim asserted in the Sims Lawsuit.

**ANSWER**: Deny.

24.

Bankers Standard is, therefore, entitled to a judicial declaration stating that Homeowners and Umbrella Policies do not provide coverage for the Sims Lawsuit.

**ANSWER**: Deny.

**Count II: Recoupment**

25.

Bankers Standard incorporates herein by reference each of the allegations contained in paragraphs 1 through 24 above.

**ANSWER**: The Dardens incorporate by reference herein each of the responses contained in above paragraphs 1 through 24.

26.

Bankers Standard has paid attorneys' fees and other costs and expenses to defend the Dardens in the Sims Lawsuit, and it may pay additional monies to

resolve claims, losses and matters not covered by the Policy.

**ANSWER**: While the Dardens admit that ACE has provided a defense, they are without knowledge as to whether and how much ACE has paid attorney's fees and other costs and expenses to defend the Dardens in the Sims lawsuit, and to what extent it has in the past or may in the future pay additional monies to resolve claims, losses and matters allegedly outside the coverage of the policy, and therefore deny this paragraph as stated.

27.

Bankers Standard is entitled to recoup from the Dardens the defense costs and/or other monies paid to resolve claims, losses and matters not covered by the Policy.

**ANSWER**: Deny.

28.

WHEREFORE, Bankers Standard prays of this Honorable Court as follows:

(a)     That this Court declare that the Homeowners and Umbrella Policies do not provide coverage for the claims asserted in the Sims Lawsuit;

(b)     That judgment be rendered in favor of Bankers Standard and against the Dardens for any fees, costs and expenses that may have been paid to defend the Dardens in the Sims Lawsuit, and for any additional

monies paid to resolve claims, losses and matters not covered by the Policy; and

(c)     That Bankers Standard receives such other relief as this Court deems just and proper.

**ANSWER**: To the extent a response is due to this numbered "WHEREFORE" paragraph, the Dardens deny that paragraph and deny that ACE is entitled to any of the relief it seeks.

## COUNTERCLAIM

Having answered ACE's Complaint, the Dardens hereby assert the following Counterclaim against Bankers Standard Insurance Company as follows:

### Parties, Jurisdiction And Venue

1.

Counterclaim Plaintiffs Calvin Darden, Sr. and Patricia Gail Darden reside in Roswell, Fulton County, Georgia, within this District and Division.

2.

Counterclaim Defendant Bankers Standard Insurance Company ("ACE") is a Pennsylvania Company with its principal office located in Philadelphia, Pennsylvania.

3.

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, in addition to this Court's existing jurisdiction over ACE's Complaint herein.

4.

ACE regularly transacts business in Georgia and in Fulton County, and issued and delivered the subject insurance policies insuring the Dardens in this county. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(a).

**The Insurance Policies**

5.

In 2011, ACE issued homeowners insurance policy no. 268-00-99-36H ("the Homeowners Policy") to the Dardens. The Homeowners Policy had an effective date of March 31, 2011 through March 31, 2012.

6.

Also in 2011, ACE issued an umbrella liability policy no. 268-00-99-36U ("the Umbrella Policy") to the Dardens.

7.

The Policies were effective from March 31, 2011 through March 31, 2012.

8.

ACE failed to issue the policies with the proper forms and endorsements

covering the Dardens for liability arising from their ownership and use of the subject boat involved in the Sims Action. Despite the Dardens' intent to have the subject boat insured by ACE, the 2011-2012 Policies mistakenly did not list the subject boat.

## The Sims Action

### 9.

Mr. Sims alleged in the Sims Action that he was injured in a boating accident on September 3, 2011, which was allegedly caused by the negligent operation of the Dardens' boat.

### 10.

At the time of the alleged accident, Mr. Darden was driving the subject boat owned by the Dardens.

### 11.

The boat was allegedly not insured under the policies issued by ACE because they were not formally scheduled on the 2011-2012 Homeowners and Umbrella policies.

## ACE's Coverage Response

### 12.

On or about November 3, 2011, ACE provided a letter to the Dardens which

indicated that ACE would investigate the above-referenced incident, respond to it, and defend any claim without waiving any of its coverage defenses. ACE further advised the Dardens to place all other applicable insurance carriers on notice. The letter was stated to be "premised upon information we currently have available to us and upon the terms and conditions of the policy."

13.

On or about October 3, 2012, ACE provided the Dardens with another letter following the filing of the Sims Action in Hamilton County, Tennessee.

14.

The October 3, 2012 letter provided that it was ACE's position that the subject boat was not insured under the Homeowners or Umbrella policies, and that ACE would "nevertheless defend you against the claims alleged in the Complaint." Despite denying coverage outright, ACE then advised the insureds that ACE "fully reserves its rights to decline coverage and payment for judgment or award against you or for any settlement you may agree to with the plaintiff, for the reasons noted above."

15.

ACE assigned attorney Andrew Anderson of the law firm Houck Anderson to defend the Dardens "with a full and complete defense against the allegations in

the [Sims Action] Complaint." ACE advised the Dardens to "extend your fullest cooperation to [attorney Anderson]." The Dardens have in fact provided their fullest cooperation to defense counsel assigned by ACE to defend the Sims Action.

16.

From 2012 through May 22, 2015, ACE provided a defense to the Sims Action through the offices of Mr. Anderson.

17.

From 2011 through May 22, 2015, ACE never advised the Dardens that it reserved or claimed a right to, or would seek, recoupment of any amounts allegedly paid by ACE in providing counsel to defend the Sims Action.

18.

On or about May 22, 2015, ACE once again corresponded with the Dardens to advise them of their new coverage position.

19.

In its May 22, 2015 correspondence, ACE advised the Dardens that, although ACE's investigation into the claim indicated that the allegations in the Sims Action are excluded under the provisions of the policies, ACE was continuing to provide a defense to the Dardens under a full and complete reservation of rights. ACE proceeded to, for the first time, advise the Dardens that

ACE reserved all of its rights to "withdraw from the defense, decline to provide coverage to or indemnify you for any of the claims asserted, to recoup any amounts paid on the Dardens' behalf and settlement of any claims," and to recoup any amounts paid by Bankers Standard in providing counsel to defend the claims.

20.

In its May 22, 2015 correspondence, ACE further advised the Dardens that: "by accepting counsel provided by Bankers Standard subject to these reservations, you acknowledge Bankers Standard legal right to assert the reservations, although you waive no rights of your own." The Dardens reject ACE's purported reservation above, and decline to acknowledge ACE's right to assert said reservations based upon ACE's continued defense of the Sims Action.

21.

ACE's May 22, 2015 correspondence was the first time ACE provided the Dardens with any notice that it now purportedly reserved the right to withdraw from the defense and to recoup any amounts paid by ACE in defending the Sims Action, despite the passage of more than three and a half years from the date ACE was initially put on notice of the incident.

## ACE Files A Declaratory Judgment And Damages Claim Against The Dardens

### 22.

On or about June 17, 2015, and without providing any previous notice to the Dardens, ACE filed the instant Declaratory Judgment and "Recoupment" action in the United States District Court for the Northern District of Georgia, Atlanta Division.

### 23.

ACE's Complaint attached documents as exhibits which improperly exposed the home address and birth dates of the Dardens, in contravention of federal and state law.

### 24.

*Inter alia*, the ACE action seeks to "recoup" from the Dardens the defense costs and/or other monies paid to resolve claims, losses, and matters not covered by the policy.

### 25.

The ACE Complaint asserts that it may pay additional monies to resolve claims, losses and matters not covered by the policy.

## Count I: Breach Of Contract Against ACE

### 26.

The Dardens re-allege and incorporate by reference the allegations contained in paragraphs 1-25 of this Counterclaim.

### 27.

The Dardens had requested full coverage for the subject boat under the Homeowners and Umbrella policies, but ACE failed to issue an appropriate endorsement covering the subject boat.

### 28.

ACE failed to honor the parties' agreement by failing to issue an endorsement to the Dardens' Homeowners and Umbrella policies covering the subject boat.

### 29.

As a direct and proximate result of ACE's breaches of the agreement between the parties, the Dardens have sustained substantial damages to be proven before a jury.

## Count II: Anticipatory Breach Against ACE

### 30.

The Dardens re-allege and incorporate by reference the allegations contained

in paragraphs 1-29 of this Counterclaim.

31.

ACE has asserted a right to control the defense of the Sims Action while simultaneously denying coverage for same.

32.

ACE now asserts a right to withdraw from the defense and to recoup any amounts paid on the Dardens' behalf in defense of the Sims Action.

33.

Pursuant to O.C.G.A. § 12-2-610, the Dardens may treat ACE's failure to provide adequate assurances that it will continue with the defense of the Sims Action as a breach.

34.

As a direct and proximate result of ACE's breach, the Dardens have sustained substantial damages to be proven before a jury.

## Count III: Declaratory Judgment Against ACE

35.

The Dardens re-allege and incorporate by reference the allegations contained in paragraphs 1-34 of this Counterclaim.

36.

Pursuant to 28 U.S.C. §§ 2201 and 2202, the Dardens request a Declaratory Judgment that ACE is liable for all fees, costs and any settlement or judgment in connection with the Sims Action, having defended the claim since October 2012 while simultaneously alleging that it had no duty to defend or indemnify the Dardens for the Sims Action.

37.

ACE has waived or is estopped from asserting non-coverage having controlled and managed the defense of the Sims Action for nearly three years.

38.

ACE has waived or is estopped from asserting any claim for recoupment having defended the Sims Action for nearly three years without ever advising the insureds that ACE reserved its rights to allegedly seek recoupment of any amounts paid by ACE in providing a defense to the Sims Action.

39.

The Dardens are concerned that ACE will settle with Mr. Sims and then charge the entire amount back to the Dardens improperly, consistent with their May 22, 2015 letter and Complaint for Declaratory Judgment and Recoupment, all in violation of Georgia law.

WHEREFORE, Premises Considered, the Dardens seek a declaratory judgment as set forth above, their litigation expenses, damages as set forth above and as proven to a jury, and such further, other, or different relief to which the Dardens may be justly entitled.

Respectfully submitted this 2nd day of September, 2015.

BARNES & THORNBURG LLP

s/ *James J. Leonard*
James J. Leonard
Georgia Bar No. 446655
Kara Cleary
Georgia Bar No. 100058
3475 Piedmont Road, N.E., Suite 1700
Atlanta, GA 30305
(404) 846-1693
jim.leonard@btlaw.com
kara.cleary@btlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2015, I electronically filed the foregoing **Calvin Darden, Sr. and Patricia Gail Darden's Answer, Affirmative Defenses, and Counterclaim** by using the CM/ECF system, which automatically sends notification of such filing to the following attorneys of record:

Alycen A. Moss
V. Morgan Carroll
Cozen O'Connor
Suite 400, Promenade Building
1230 Peachtree Street, N.E.
Atlanta, GA 30309
amoss@cozen.com
vcarroll@cozen.com


s/ *James J. Leonard*
James J. Leonard
Georgia Bar No. 446655

ATDS01 280733v1